# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

IN RE:

Western Robidoux, Inc.,

           Debtor.

_____

TooBaRoo, LLC,

           Plaintiff,

      v.

Burri Properties, LLC., et al.,

           Defendants.

Case No. 22-mc-9005-NKL
Lead Bankruptcy Case No: 19-50505-BTF

## ORDER

Before the Court are Proposed Findings of Fact and Conclusions of Law, Doc. 1, issued by the United States Bankruptcy Court for the Western District of Missouri.[1] The Proposed Findings address Plaintiff TooBaRoo, LLC's pending Motion to Remand and Abstain (the "Motion").[2] In that Motion, TooBaRoo asked the Bankruptcy Court to remand its state court lawsuit against the named Defendants (the "Burri Defendants") for a lack of subject matter jurisdiction; TooBaRoo alternatively requested abstention by the federal courts.

In its state court lawsuit, TooBaRoo asserts two claims: a creditor's bill (Count I) and a piercing-the-corporate-veil claim (Count II). In both Counts, TooBaRoo seeks to collect from the Burri Defendants a judgment TooBaRoo obtained against Western Robidoux, Inc. ("WRI") for

_____

[1] The Honorable Brian T. Fenimore, Chief United States Bankruptcy Judge

[2] *See also TooBaRoo, LLC v. Burri Properties, LLC*, 21-ap-4016-BTF, Doc. 10-1.

breach of a joint venture agreement. WRI is not a defendant in TooBaRoo's state court lawsuit. Rather, TooBaRoo contends that it should be able to collect the WRI judgment from the Burri Defendants because they wrongfully stripped assets from WRI to prevent TooBaRoo's from collecting on the judgment.[3] Months after the automatic bankruptcy stay began, TooBaRoo filed its pending lawsuit in state court, in March of 2021.

WRI filed for bankruptcy in October 2019, triggering an automatic stay. TooBaRoo did not seek to lift the automatic stay before filing its state court lawsuit. The Burri Defendants removed TooBaRoo's state court lawsuit to the United States Bankruptcy Court for the Western District of Missouri, claiming federal jurisdiction based on WRI's pending bankruptcy. TooBaRoo then filed the current Motion to Remand and Abstain. The Burri Defendants opposed TooBaRoo's Motion to Remand and Abstain, as did the chapter 7 trustee, Jill Olsen (the "Trustee"), who intervened.

Based on *Stern v. Marshall*, 564 U.S. 462 (2011), the Bankruptcy Court determined that it lacked jurisdiction to finally resolve the Motion to Remand and Abstain, and it therefore issued Proposed Findings of Fact and Conclusions of Law for de novo consideration by this Court. The

---

[3] For clarity, the Court refers here to the Plaintiff's own language describing its claims. TooBaRoo's creditor's bill claim is "brought in aid of collecting the $1.3 million judgment" it previously obtained "against Western Robidoux." Doc. 1-2 at page 54. TooBaRoo alleges that [the Burri Defendants] "stripped [WRI] of its property and assets in order for [WRI] to avoid paying the debt to [TooBaRoo]." Doc. 1-2 at 44. In its prayer for relief on its creditor's bill claim, TooBaRoo asks to be allowed to "trace the value of goods and services rendered to an empty shell corporation [WRI] to the [Burri Defendants] to allow Plaintiff to reach and collect upon the assets of the [Burri Defendants][.]" Doc. 1-2, at ECF 56 ¶ 73. Count II seeks to reach the Burri Defendants' assets by piercing the corporate veil of WRI, the judgment debtor. TooBaRoo prays in Count II that "this Court find that the [Burri Defendants] are the alter egos of [WRI], the named judgment debtor, pierce the corporate veil and hold [Burri Defendants] liable for the profits traceable to them . . . and allow Plaintiff to collect such [wrongfully obtained] profits from the Defendants[.]" Doc. 1-2, at ECF 58; *see also* Doc. 1, at 32, n. 40 (Proposed Findings of Fact and Conclusions of Law).

Bankruptcy Court ultimately concluded that TooBaRoo's Motion should be denied and the state court lawsuit should be dismissed as void *ab initio*.  As explained in detail below, the Court adopts the Bankruptcy Court's Proposed Findings in full.  The Court concludes that while TooBaRoo's claims against the Burri Defendants are not the property of WRI's Bankruptcy Estate (the "Estate"), TooBaRoo's lawsuit was filed in violation of the automatic bankruptcy stay provided by 11 U.S.C. §§ 362(a)(1) and (a)(6) and is therefore void.  TooBaRoo's claims are DISMISSED without prejudice and its Motion to Remand is DENIED as moot.[4]

## I.    STANDARD

Because the Bankruptcy Court concluded that it did not have Constitutional authority to enter a final judgment—a conclusion to which no party objects and that this Court adopts—the Bankruptcy Court was required to issue proposed findings of facts and conclusions of law for *de novo* review by the district court.  *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670–71 (2015).  Accordingly, "any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing . . . those matters to which any party has timely and specifically objected." *Cutcliff v. Reuter*, 791 F.3d 875, 881 (8th Cir. 2015).

While the Court must review *de novo* any issue that implicates Article III concerns, *see generally, Wellness Int'l Network*, 575 U.S. at 670–71, those concerns generally do not stretch to issues unique or exclusive to the bankruptcy process.  *Stern*, 564 U.S. at 499; *see also In re Reed*, 888 F.3d 930, 935 (8th Cir. 2018) (holding that bankruptcy court's show cause and sanctions orders did not violate *Stern* because the orders "stem[] from the bankruptcy itself and do not

---

[4] In case this Court disagreed with its proposed finding that TooBaRoo's lawsuit is void, the Bankruptcy Court continued its analysis, addressing topics like abstention.  Because the Court agrees that TooBaRoo's pending lawsuit is void and must be dismissed, it does not reach those additional issues.

implicate a common-law claim," and recognizing that *Stern* "affect[s] only . . . one small part of the bankruptcy judges' authority."). Accordingly, the Court reviews those matters left to the bankruptcy court's discretion, such as stay relief—a special creature of bankruptcy law—for an abuse of discretion. *Cox v. Specialty Vehicle Sols.*, LLC, 715 Fed. Appx. 443, 447 (6th Cir. 2017) (noting that the ability to grant stay relief is a "unique statutory power" afforded to the Bankruptcy Court); *Ritchie Special Credit Investments, Ltd. v. U.S. Tr.*, 620 F.3d 847, 853 (8th Cir. 2010) (explaining that decisions left to the bankruptcy court's discretion will be reviewed for an abuse of discretion). An abuse of discretion occurs when the "bankruptcy court relies upon erroneous legal conclusions or clearly erroneous factual findings." *Hill v. Snyder*, 919 F.3d 1081, 1084 (8th Cir. 2019).

## II.  BACKGROUND

The Parties in this case have both a business and familial relationship. The Plaintiff, TooBaRoo, LLC, is a single-member LLC owned by Breht Burri. The Burri Defendants appear to be Breht's family members and their trusts. Both Breht and the individual Burri Defendants formerly acted as officers and shareholders of WRI, a commercial printing and fulfillment company headquartered in Missouri.

In 2009, TooBaRoo and WRI began a joint venture. The joint venture was successful and generated substantial profits while it operated. After several years, a dispute arose concerning TooBaRoo's compensation from the joint venture. That dispute gave rise to litigation in federal and state court. In September 2019, TooBaRoo obtained a judgment against WRI for breach of the joint venture agreement, totaling over a million dollars. *See* Doc. 1-2, at ECF 59–62. TooBaRoo later sought to enforce its state court judgment by garnishing WRI's bank accounts.

In October 2019, only days after TooBaRoo began its attempts to satisfy the judgment, WRI filed a chapter 11 petition. WRI later ceased operations, and the Bankruptcy Court converted

4

WRI's case to a chapter 7 bankruptcy. The United States Trustee appointed Jill Olsen as the chapter 7 trustee.

TooBaRoo filed a nonpriority, unsecured proof of claim against WRI's bankruptcy estate. That proof of claim is based entirely on TooBaRoo's 2019 state court judgment and associated costs. *See* Doc. 1, at 4. Counsel for TooBaRoo conceded to the Bankruptcy Court that any amount TooBaRoo collects from the Burri defendants in this proceeding could reduce the amount of TooBaRoo's claim against WRI in the bankruptcy case. Doc. 1, at 4–5.

In March 2021, long after an automatic stay was triggered by WRI's October 2019 bankruptcy, and without seeking stay relief from the Bankruptcy Court, TooBaRoo's filed its pending two-count lawsuit against the Burri Defendants in Missouri state court. Both state law claims are meant to satisfy TooBaRoo's judgment against WRI by recovering money from the Burri Defendants, who allegedly "stripped [WRI] of its property and assets." Doc 1-2, at ECF 44 ¶ 2. TooBaRoo alleges, in relevant part, that the Burri Defendants are liable under a creditor's bill and a veil piercing cause of action because the Burri Defendants shifted "the profits of [WRI]" to themselves, causing them to receive "huge unjust profits;" caused WRI to enter into a pre-bankruptcy "sweetheart lease" that unduly benefitted defendant Burri Properties, LLC; paid themselves excessive salaries, bonuses, and rents; "used [WRI]'s profits to buy assets for their personal use;" and "caused [WRI] to pay millions of dollars in legal fees for the defense of the [Burri Defendants] and [WRI's two largest clients]." *Id.* at ECF 44–57.

Joined by the Trustee, the Burri Defendants argue that the Bankruptcy Court should hear the removed causes of action because (1) both the causes of action and the property TooBaRoo seeks through them are property of WRI's Bankruptcy Estate (the "Estate"), therefore stripping TooBaRoo of its authority to assert them and (2) TooBaRoo's pursuit of this proceeding violates

5

the automatic stay. TooBaRoo argues the Bankruptcy Court lacks subject matter jurisdiction over the removed lawsuit because TooBaRoo does not seek property of the Estate, but rather is seeking the return of its own property.

## III. DISCUSSION

### A. Whether TooBaRoo's Claims Are Property of the Estate

The first question this Court must address is whether TooBaRoo's creditor's bill and veil piercing claims are property of the Estate, meaning that the Trustee had the exclusive authority to bring them. The Trustee and the Burri Defendants object to the Bankruptcy Court's Proposed Findings on this point.

The property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Because causes of action are interests in property, it follows that the trustee has authority under 11 U.S.C. § 704(1) to assert causes of action that belong to the debtor. *Mixon v. Anderson* (*In re Ozark Rest. Equip. Co.*), 816 F.2d 1222, 1225 (8th Cir. 1987) ("*Ozark*"); *see also Ritchie Special Credit Investments, Ltd. v. JPMorgan Chase & Co.*, 48 F.4th 896, 899 (8th Cir. 2022). That authority is exclusive—if a cause of action belongs to the estate and the trustee has not abandoned it, a creditor may not assert the cause of action while the bankruptcy case is pending. *See Artesanias Hacienda Real S.A. DE C.V. v. North Mill Cap., LLC (In re Wilton Armetale, Inc.)*, 968 F.3d 273, 279–81, 284–85 (3d Cir. 2020). Conversely, if a cause of action does not belong to a debtor at the time a petition for bankruptcy is filed, then the bankruptcy case does nothing to affect a creditor's right to proceed, unless they otherwise violate the automatic stay.

As a preliminary matter, the Court must determine what test to apply to determine if a cause of action belongs to a debtor or creditor. There is a circuit split on the issue. *See, e.g., Koch Refin. V. Farmers Union Cent. Exch., Inc.*, 831 F2d 1339, 1347 n. 11, 1347-49 (7th Cir. 1987). Some

circuits focus on whether the creditor's cause of action is to recover for a direct injury to the creditor or is derivative of an injury that has been done to the debtor. *See* Doc. 1, 16–17 & n.37. The Eighth Circuit's analysis does not turn on the "derivative" versus "direct" distinction. Rather it focuses on whether the debtor can assert its cause of action under state law. *See In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1224–1228 (8th Cir. 1987); *Moratzka v. Morris (In re Senior Cottages of AM., LLC),* 482 F3d 997,1001–05 (8th Cir. 2007) (focusing on state law); *see also Ritchie Special Credit Investments, Ltd. v. JPMorgan Chase & Co.*, 48 F.4th 896, 899 (8th Cir. 2022) (reiterating the test adopted in *In re Senior Cottages*).[5] The parties seem to agree that Missouri law controls. Accordingly, if WRI, at the time it filed for bankruptcy, could have brought under Missouri law the creditor's bill claim and the piercing-the-veil claim, then those claims belong to the bankruptcy estate, through the trustee, in the first instance.[6]

The Court now turns to each claim separately to apply this test.

---

[5] The Court is aware that *Highland Cap. Mgmt. L.P. v. Welsh Carson, Anderson & Stowe, VI, L.P. (In re Bridge Info. Sys,)* 344 B.K. 587, 593–594 (E.D. Mo. 2006), suggests a different test, but the Court does not find that case persuasive because it relies on precedent from other circuits and appears to be contrary to binding 8th Circuit law, established *In Re Ozark* and reaffirmed just months ago in *Ritchie Special Credit Investments*. 48 F.4th at 899.

[6] The Trustee and Burri Defendants argue that TooBaRoo's claims cannot be pursued by TooBaRoo because, under Missouri law, only a corporation can bring a claim to recover for its "direct" injuries. Doc. 1 -19. As an initial matter, the Court disagrees that this principle precludes a creditor from filing a creditor's bill or veil piercing claim. Indeed, Missouri law clearly permits creditors to do so. *Mobious Mgmt. Sys. Inc. v. W. Physician Search, LLC,* 175 S.W.3d 186 (Mo. Ct. App. 2005) (reversing dismissal of creditor's bill and veil piercing claims by creditor). Rather, the Trustee's argument relates to TooBaRoo's ultimate success on the merits of its underlying claims, not whether those claims are property of the Estate. Even if Missouri law forecloses TooBaRoo's ability to recover using the causes of action it pled, it does not follow that those causes of action become Estate property. At bottom, the question is whether WRI, just before filing for bankruptcy, could have filed the causes of action now advanced by TooBaRoo. As the Court will soon discuss, WRI could not have filed, and so the Trustee cannot now file, TooBaRoo's causes of action.

### i. Whether TooBaRoo's Creditor Bill Claim Belongs to Bankruptcy Estate

A creditor's bill is an equitable collection action that a creditor may use, among other purposes, "to discover the debtor's assets, to reach equitable interests not subject to execution at law, and to set aside fraudulent conveyances." *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999); *see also H.H. Robertson Co., Cupples Products Div. v. V.S. DiCarlo Gen. Contractors, Inc.*, 994 F.2d 476, 477–78 (8th Cir. 1993). Despite sharing many characteristics of an action under the Missouri Uniform Fraudulent Transfer Act, the common law claim for a creditors bill was not supplanted by its statutory counterpart, and still exists in Missouri. *Fleming Cos., Inc. v. Rich*, 978 F. Supp. 1281, 1293–1305 (E.D. Mo. 1997). But a creditor's bill is meant to be a last resort, to be invoked only when creditors lack an adequate remedy at law. *Linder v. Hawkeye-Sec. Ins. Co.*, 472 S.W.2d 412, 414 (Mo. 1971); *Coleman v. Hagey*, 158 S.W. 829, 837–38 (Mo. 1913) (explaining a creditor's bill requires a plaintiff to exhaust all legal remedies and state an equitable basis for the requested relief).

The Bankruptcy Court reasoned that because WRI is not a judgment creditor lacking recourse at law, WRI could not—and the Trustee cannot now—proceed on a creditor's bill claim. Doc. 1, at 23. The Burri Defendants and the Trustee do not attack the Bankruptcy Court's analysis of Missouri law. Indeed, *Schockley*—the only case cited by the Trustee and Burri Defendants to address a creditor's bill claim under Missouri law—does nothing to suggest that the Trustee, or anyone other than a creditor with some previously-established legal entitlement to enforce a judgment, could bring a creditor's bill claim. Doc. 1-1, at 4 (citing *Shockley v. Harry Sander Realty Co.*, 771 S.W.2d 922, 924 (Mo. Ct. App. 1989)). To the contrary, *Shockley*, a case by a creditor, repeatedly emphasizes that a creditor's bill is meant to aid *creditors* in the execution of previously obtained judgments. *Shockley*, 771 S.W.2d at 924–25; *see also Buckley v. Maupin*, 344 Mo. 193, 125 S.W.2d 820, 823 (Mo. 1939) (holding that only a judgment creditor or one who has

established his legal or equitable lien on property, and who has no adequate remedy at law, is entitled to proceed on a creditors bill). Just like the Bankruptcy Court, this Court found no authority—and none was cited—holding, or even suggesting, that anyone other than a creditor that obtained a money judgment could bring a creditor's bill claim.

However, the Burri Defendants and the Trustee, counter that, under 11 U.S.C. § 544(a), the trustee stands in the shoes of creditors and therefore assumes all the creditors' rights and powers, including the right to bring a creditor's bill. This argument has been directly foreclosed by the Eighth Circuit; Section 544 does not permit a bankruptcy trustee to file claims that belong *only* to creditors. *In re B.J. McAdams, Inc.*, 66 F.3d 931, 935 (8th Cir. 1995) ("Congress's message is clear—no trustee, whether a reorganization trustee as in *Caplin* [*v. Marine Midland Grace Trust Co.*, 406 U.S. 416], or a liquidation trustee . . . has power under Section 544 of the Code to assert general causes of action, such as the alter ego claim, on behalf of the bankrupt estate's creditors."). At bottom, in the Eighth Circuit, a bankruptcy trustee "steps into the shoes of the debtor for the purposes of asserting or maintain[ing] the debtor's causes of action, which become property of the estate." *Id.* (citing *In re Rare Coin Galleries of America, Inc.*, 862 F.2d 896, 901 (1st Cir. 1988)). "[W]hile a trustee can pursue causes of action belonging to the debtor, only the creditors of the corporation can pursue a cause of action belonging [exclusively to the creditors]." *Id.*; *see also Ritchie Special Credit Investments*, 48 F.4th at 899 ("If [a claim] is 'personal to a specific creditor,' on the other hand, then it is fair game for an individual lawsuit."). The Burri Defendants and the Trustee attack the Eight Circuit's prior decisions, noting the Eighth Circuit represents the minority view and its caselaw should be reexamined. Even if that were true, this Court must nonetheless follow the Eighth Circuit.

Finally, the Burri Defendants and the Trustee argue that, even under Eighth Circuit

precedent, the Bankruptcy Court erred because a creditors bill claim duplicates and usurps the Trustee's exclusive authority to set aside fraudulent conveyances. While a creditor's bill is itself exclusive to a judgment creditor under Missouri law, this holding does nothing to eliminate other options available to a bankruptcy trustee, who may use her broad powers under the Bankruptcy Code and applicable state law to recover property of a bankruptcy estate. *See generally* 11 U.S.C. §§ 544(b), 548(a), 550; *Tow v. Rafizadeh (In re Cyrus II P'ship)*, 413 B.R. 609, 614 (Bankr. S.D. Tex. 2008) (explaining that § 544(b) claims are "federal causes of action rooted in federal bankruptcy law"); *see also* 5 Collier on Bankruptcy, ¶¶ 544.02–04, 06 (explaining a trustee's strong arm or avoidance powers under 11 U.S.C. § 544), ¶¶ 548.01–02 (explaining trustee's powers to avoid fraudulent transfers under 11 U.S.C. § 548). Accordingly, a bankruptcy trustee has no need to rely upon a common law creditor's bill; the Trustee, on behalf of WRI, has other tools at her disposal, including her avoidance powers and other causes of action that belong to WRI to set aside wrongful transfers. *See In re Ostrom-Martin, Inc.*, 188 B.R. 245, 251 (Bankr. C.D. Ill. 1995) (explaining that a bankruptcy trustee possesses two sources of power: those brought as successor to the debtor's interest in the bankruptcy estate (generally state law claims), and those arising from the trustee's avoidance powers) (citing 2 Collier on Bankruptcy, ¶ 323.02[4]. p. 323–10)).

Nor does determining that the creditor's bill claim does not belong to the Estate mean that TooBaRoo can use it to short circuit the Trustee's efforts to administer WRI's bankruptcy estate. As the Bankruptcy Court proposed—and this Court soon adopts—TooBaRoo's claims are stayed. TooBaRoo cannot, absent permission from the Bankruptcy Court, use its claims to interfere with the Trustee's duties.

Accordingly, consistent with *Ozark*, 816 F.2d at 1225, because WRI, a judgment debtor, could not have brought the creditor's bill claim as pled in the removed lawsuit, the creditor's bill

claim is not property of the Estate.[7]

###### ii. Whether TooBaRoo's Claim to Pierce the Corporate Veil Belongs to Bankruptcy Estate

The Bankruptcy Court also concluded that TooBaRoo's cause of action to pierce WRI's corporate veil to reach assets of the Burri Defendants did not belong to the Estate. As discussed above, the question turns on whether Missouri law would permit WRI to bring a claim to pierce its own corporate veil to hold corporate insiders liable for a corporate debt. The Bankruptcy Court concluded WRI could not. The Court again agrees with the Bankruptcy Court and concludes that the veil piercing claim, as pled by TooBaRoo, is not property of the Estate.

As explained by the Bankruptcy Court, veil piercing is an equitable doctrine used to disregard the corporate form and impose liability on a corporation's owners when those owners have "use[d] the corporate form to accomplish a fraud, injustice, or some unlawful purpose." *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 375 (Mo. Ct. App. 2014). Parties may either (1) bring a veil piercing cause of action to hold insiders liable for a corporation's debts or (2) premise other causes of action on veil piercing theories. *See, e.g.*, *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 40 (Mo. 1999) (explaining veil piercing as an action "to hold the corporation's owners liable for its debt"); *Cent. Cooling & Supply Co. v. Dir. of Revenue*, 648 S.W.2d 546, 547–49 (Mo. 1982) (determining tax liability action premised on alter ego theory).

The Bankruptcy Court was correct to conclude that WRI could not pierce its own corporate structure to reach assets held by the Burri Defendants. As it recognized, neither the Missouri Supreme Court nor the intermediate courts of appeal have directly addressed whether a corporation

---

[7] The Court's analysis is limited only to whether TooBaRoo's causes of action, as pled, belong to the Estate. Nothing in this Order should be construed to address the viability or ultimate success of TooBaRoo's claims, as neither issue is before this Court.

Case 4:22-mc-09005-NKL   Document 7   Filed 12/13/22   Page 11 of 33

can pierce its own corporate veil to hold a corporate insider liable for the corporation's debts. However, the default rule in Missouri is that a corporation's veil may only be pierced upon a showing by a third party that it was injured by an abuse of the corporate form. *Edward D. Gevers Heating & Air Condition Co. v. R. Webbe Corp.*, 885 S.W.2d 771, 773-74 (Mo Ct. App. 1994) ("Implicit in this test for piercing the corporate veil is the requirement that the wrong done be the proximate cause of injury to third persons who dealt with the corporation."); *Osler v. Joplin Life Ins. Co.*, 164 S.W.2d 295, 298 (Mo. 1942) ("The courts will ignore separate corporate entities in order to defeat a fraud, wrong, or injustice, at least where the rights of third persons are concerned."). While the Missouri Supreme Court has not expressly *held* that self-piercing is not permitted, it has indicated as much. It "found no fault" in principles of corporate identity expressed by a lower court (albeit in a different context); specifically, that "it is totally incongruous and patently unjust to permit the parent to hide behind the shield of separate corporate identity when advantageous, but to disallow such separateness when it is not. Strangers may be permitted to show commonality of control and identity, but the corporation may not 'pierce its own corporate veil'—a veil it has deliberately established." *Anglim v. Mo. Pac. R.R. Co.*, 832 S.W.2d 298, 309 (Mo. 1992) (quoting *Boswell v. May Ctrs., Inc.*, 669 S.W.2d 585, 586 (Mo. Ct. App. 1984)).

In contrast, the Burri Defendants and the Trustee cite to no Missouri case law that supports a finding that a corporation can self-pierce to hold shareholders responsible for corporate debts to third parties. Instead, they cite two bankruptcy cases interpreting Missouri law: *In re Bridge Info. Sys., Inc.*, 344 B.R. 587, 596–97 (Bankr. E.D. Mo. 2006) and *In re Americana Services, Inc.*, 173 B.R. 650, 654 (Bankr. W.D. Mo. 1994). The Bankruptcy Court reasoned that while these bankruptcy cases did recognize an exception to Missouri's general rule, neither of them sourced that exception from Missouri law itself. Doc. 1, at 26 ("Those decisions appear to have arisen

from the bankruptcy courts' desires to protect assets of the estate that had been transferred—not from an exception that exists under Missouri law."). The Court agrees. TooBaRoo's cause of action to pierce the corporate veil is not property of the Estate.

***

In sum, the Court finds that WRI could not itself bring either a creditor's bill or a veil piercing claim to satisfy TooBaRoo's previous judgment. Therefore, the causes of action pled by TooBaRoo do not belong to the Estate.

### B. Whether TooBaRoo's Claims Are Subject to the Automatic Bankruptcy Stay

While the Bankruptcy Court concluded that TooBaRoo's causes of action were not property of the Estate, it nonetheless proposed finding that TooBaRoo's petition is void *ab initio* for violating the automatic bankruptcy stay.

As the Bankruptcy Court explained, the filing of a bankruptcy petition triggers an automatic stay. 11 U.S.C. § 362(a). As its name implies, the automatic stay operates to immediately stay all non-bankruptcy collection activity.[8] *Id.*; *City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021). An automatic stay accomplishes several fundamental goals in bankruptcy. S*ee LaBarge*

---

[8] TooBaRoo argues that the stay cannot apply because the Trustee, on WRI's behalf, never filed a motion seeking to apply the stay to TooBaRoo. The Court disagrees. As the Bankruptcy Court explained, it could extend the automatic stay beyond the plain language of § 362(a) through injunctive powers provided by 11 U.S.C. § 105(a), but that is an entirely separate issue—which requires a different analysis—from whether the automatic stay applies in the first place. Because the Court concludes that the state court lawsuit violates the plain text of § 362(a)(1) and (a)(6), the automatic stay (automatically) applies. *In re Bora Bora, Inc.*, 424 B.R. 17, 24 (Bankr. D.P.R. 2010) (discussing the difference between finding that § 362(a) applies and finding that the automatic stay should be "extended," through the bankruptcy court's injunctive powers, beyond the bounds of the automatic stay under § 362(a)). The Court has no need to extend the automatic stay beyond its statutory scope. For the same reason, the Court rejects TooBaRoo's argument that a separate adversary proceeding was necessary. While an adversary proceeding may be required to *extend* the automatic stay, it is certainly not required for the automatic stay to apply within its regular statutory bounds.

13

*v. Vierkant (In re Vierkant)*, 240 B.R. 317, 320–21 (B.A.P. 8th Cir. 1999). As the Bankruptcy Court noted, a stay prevents a race to the debtor's assets, prevents "individual creditors from pursuing their own interests to the detriments of the others[,]" and ensures that all creditors receive fair treatment under the Bankruptcy Code. *Fulton*, 141 S.Ct. at 589; *Nat'l Bank of Ark. v. Panther Mountain Land Dev., LLC (In re Panther Mountain Land Dev., LLC)*, 686 F.3d 916, 927 (8th Cir. 2012).

However, as TooBaRoo explained—and the Bankruptcy Court recognized—an automatic stay generally does not protect non-debtor third parties. *See generally* Doc. 1, at 28 (Bankruptcy Court discussing third-party effect of an automatic stay). That said, the plain language of § 362(a) makes clear that third parties will at times be impacted by an automatic stay. Specifically, a legal proceeding against non-debtors may violate the automatic stay if the plaintiff seeks to exercise control over property of the estate, acts to satisfy a judgment the plaintiff has against the debtor, or takes any other action that § 362 explicitly prohibits. *See, e.g.*, *Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corp. Sys., Inc.)*, 108 F.3d 881, 883–84 (8th Cir. 1997) (*Just Brakes I*) (determining creditor violated the plain language of § 362(a)(6) by applying escrow proceeds derived from the sale of bankruptcy debtor's alleged fraudulently transferred property to satisfy a prepetition judgment against the bankruptcy debtor); *Bergman v. Wintroub (In re Wintroub)*, 284 B.R. 680, 681 (B.A.P. 8th Cir. 2002) (determining creditor's pursuit of a claim for reimbursement from non-debtor disciplinary commission fund based on debtor's alleged prepetition misconduct "f[ell] squarely within the ambit of 11 U.S.C. § 362(a)(1)").

Here, the Bankruptcy Court proposed finding that TooBaRoo's state court lawsuit violated the automatic stay in two ways: first, TooBaRoo's lawsuit was "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that

14

was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the [bankruptcy petition date]," *id.* § 362(a)(1); and second, the proceedings qualified as "any act to collect, assess, or recover a claim against the debtor that arose before the [bankruptcy petition date]." *Id.* § 362(a)(6).[9] TooBaRoo argues that the Bankruptcy Court erred under both sections. The Court agrees with the Bankruptcy Court and concludes that TooBaRoo's claims are stayed by both §§ 362(a)(1) and (a)(6).

### i. Whether TooBaRoo's Petition Was Automatically Stayed by 11 U.S.C § 362(a)(1)

First, the Bankruptcy Court concluded that TooBaRoo violated the automatic stay provided by 11 U.S.C. § 362(a)(1). § 362(a)(1) stays the commencement or continuation of, among other things, any lawsuit to "recover a claim against the debtor." The primary issue about which the Bankruptcy Court and TooBaRoo disagree is whether § 362(a)(1) applies when a creditor attempts to satisfy a judgment against the debtor through collection efforts against a third-party non-debtor. The Bankruptcy Court acknowledged that § 362(a)(1) bears two plausible interpretations, which it presented using the chart below:

| INTERPRETATION ONE | INTERPRETATION TWO |
|---|---|
| the commencement or continuation . . . of a judicial, administrative, or other action or proceeding<br><br>a. *against the debtor* that was or could have been commenced before the commencement of the case under this title, or<br>b. to recover a claim against the debtor that arose before the [petition date]. | the commencement or continuation . . . of a judicial, administrative, or other action or proceeding *against the debtor*<br><br>a. that was or could have been commenced before the commencement of the case under this title, or<br>b. to recover a claim against the debtor that arose before the [petition date]. |

---

[9] The Bankruptcy Court also analyzed whether 11 U.S.C. 362(a)(3) applies, and concluded it did not. No party objects to this conclusion, and it is not necessary to the outcome of this case. Accordingly, the Court will not review the Bankruptcy Court's determination under § 362(a)(3).

*See* Doc. 1, at 38. The operative difference between the two interpretations is that, under the second interpretation, § 362(a)(1) stays only actions against the debtor, while the first applies more broadly to stay any act to recover a claim against the debtor, even if the act is taken against a non-debtor. The Bankruptcy Court adopted the first interpretation. This Court agrees for four primary reasons.

First, this conclusion honors the broad definition of "claim" in the bankruptcy code. A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). TooBaRoo's lawsuit is, by the terms of its current state court petition, seeking to recover a "claim" (a judgment) it has against WRI. While it seeks to do so against third parties, "[a]bsent a claim against [WRI] there is no independent basis for the action against the [individual Burri Defendants]." *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131–32 (2d Cir. 1992) (quoting *In re Saunders*, 101 B.R. 303, 304–06 (Bankr. N.D. Fla. 1989)). Relatedly, the preexisting judgment against WRI establishes the scope for TooBaRoo's potential recovery, as it can "only recover property or value thereof received from [WRI] sufficient to satisfy [TooBaRoo's] claim against [WRI]." *Id.*

Second, as explained by the Bankruptcy Court, following the second interpretation would endorse reading statutory language as surplusage. *See In re Colonial Realty Co.*, 980 F.2d at 131–32 (2d Cir. 1992). "The latter category [clause (b), proceedings to recover claims against debtors] must encompass cases in which the debtor is not a defendant; it would otherwise be totally duplicative of the former category [clause (a), proceedings against the debtor] and pure

surplusage." *Id.* at 131. Because courts must avoid interpretations that result in surplusage, *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012), the Court agrees that § 362(a)(1) can include causes of action against third parties to satisfy a judgment against a debtor.

Third, as the Bankruptcy Court noted, had Congress intended §362(a)(1) to apply only to actions directly against the debtor, it could have used more explicit language, such as "to recover from a debtor" rather than "to recover a claim against the debtor." Because Congress instead prohibited proceedings "to recover a claim against the debtor," the court interprets § 362(a)(1) to prohibit any proceeding to recover a claim a creditor holds against a debtor, even if the defendant in the proceeding is a non-debtor.

Fourth, the legislative history of § 362(a)(1) makes clear that it was meant to apply in exactly this situation. It states "[t]he provision in this first paragraph prohibiting the issuance of process is designed to prevent the issuance of a writ of execution by a judgment creditor of the debtor to obtain property that was property of the debtor before the case but that was transferred, subject to the judgment lien, before the case. Because the other paragraphs of this subsection refer only to property of the estate or property of the debtor, neither of which apply to this kind of transferred property, they would not prohibit pursuit of the transferred property by issuance of process." *See In re Colonial Realty Co.*, 980 F.2d at 131–32 (citations omitted).

Taken together, and considering the purposes the automatic stay serves, the Court agrees that § 362(a)(1) stays proceedings to collect claims against debtors, even if the lawsuit or proceedings attempting to do so are against a non-debtor. Holding otherwise would permit TooBaRoo—WRI's creditor—to act in its own interests, potentially to the detriment of WRI's other creditors. The Bankruptcy Court clearly articulated the numerous ways such an interpretation would impact the orderly administration of a bankruptcy estate, and this Court shares

those concerns.

TooBaRoo argues interpreting § 362(a)(1) to encompass actions to recover payments owed by the debtor from non-debtor third parties "creates new law and contravenes long standing Eighth Circuit law." Doc. 1-2, at 21. TooBaRoo cites four Eighth Circuit cases in support of its argument, but none involve the application of an automatic stay in a case in which a judgment creditor attempted to collect a judgment against the debtor through a third party. *See Nat'l Bank of Ark. v. Panther Mountain Land Dev., LLC (In re Panther Mountain Land Dev., LLC)*, 686 F.3d 916, 927 (8th Cir. 2012) (finding non-monetary constitutional claim against non-debtor quasi-governmental entity did not violate bankruptcy stay); *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 762 (8th Cir. 2011) (analogizing to Bankruptcy Code in receivership action to ultimately conclude that a bankruptcy court could not stay third-party action when it does not impact the debtor entity); *Stephen Inv. Sec's, Inc. v. S.E.C.*, 27 F.3d 339, 342 n.5 (8th Cir. 1994) (finding automatic stay not violated by SEC administrative proceeding against securities dealer whose principal was bankruptcy debtor); *Croyden Assocs. v. Alleco, Inc.*, 969 F.2d 675, 677 (8th Cir. 1992) (finding stay applied to debtor debenture issuer, but not non-debtor co-defendant who assumed obligations under debentures in an action for money owed under debentures). At best, these cases recognize, as the Bankruptcy Court did, that § 362(a)(1) "draws a meaningful distinction between (a) legal proceedings based on non-debtors' independent liability (e.g., as co-borrowers or guarantors) and (b) actions against nondebtors [that] the plaintiff brings exclusively to satisfy existing claims against debtors." Doc. 1, at 40.

TooBaRoo also argues that interpreting § 362(a) to apply to attempts to satisfy a pre-petition judgment against a debtor through a third party under the circumstances of this case would render 11 U.S.C. §§ 1201 and 1301 superfluous. The Court disagrees. Those sections extend the

automatic stay in Chapter 12 and 13 cases to any acts "to collect all or any part of a consumer debt of the debtor from any individual *that is liable on such debt with the debtor, or that secured such debt*[.]" 11 U.S.C. §§ 1201 and 1301 (emphasis added); *In re Advanced Ribbons & Office Prods., Inc.*, 125 B.R. 259, 265 (B.A.P. 9th Cir. 1991). As the Court has explained, neither its, nor the Bankruptcy Court's, interpretation of § 362(a) is broad enough to extend the automatic stay in Chapter 7 cases to those who have liability on a debt independent from the obligation of the debtor, such as a guarantor or someone who offered a security for the debtor. §§ 1201 and 1301 merely reflect congressional intent, in Chapter 12 and Chapter 13 cases, to extend the automatic stay to protect those who may be independently liable on a consumer debt, given the particularities of those chapters. The Burri Defendants are not independently liable to TooBaRoo for the judgment against WRI. TooBaRoo's claim against them, as pled, exists only because it has judgment against a bankruptcy debtor.

The Second Circuit in *In re Colonial Realty* confronted a similar situation. There, the FDIC, on behalf of creditor banks, filed suit against a nondebtor to collect millions of dollars fraudulently transferred out of debtor to repay various loans. *In re Colonial Realty Co.*, 980 F.2d at 127–28, 132. The Second Circuit found that, even though the claims were against a nondebtor third party, they were "clearly seeking to recover a claim against the [debtor]. The complaint filed by the FDIC in [the case against transferees] specifically alleges that [debtor] is liable to the FDIC as a result of loans made by the failed banks, and that the named defendants are liable as fraudulent transferees of [debtor]. Thus, if [debtor] were not liable to the FDIC on the bank loans, the FDIC would have no independent claim against these defendants." *Id.* at 132. Ultimately, the Second Circuit concluded that the FDIC's claim against a nondebtor, attempting to use funds fraudulently transferred out of a debtor to satisfy a creditor's claim against the bankruptcy debtor, violated §

362(a)(1) as an action to recover a claim against the debtor. *Id.* This is exactly what TooBaRoo seeks to do.

TooBaRoo attempts to distinguish *In re Colonial Realty* by pointing out that the case turned on the interplay between the Bankruptcy Code and certain laws empowering the FDIC to liquidate banks. While the Second Circuit was forced to confront seemingly novel issues related to the FDIC in that case, the relevant portion of the Second Circuit's opinion is in no way impacted by those issues.

At bottom, TooBaRoo's pending lawsuit, in its own words, "is brought in aid of collecting the $1.3 million dollar judgment against WRI, which is now uncollectible from WRI due to WRI's bankruptcy and liquidation plan." Doc. 1-2, at 54, 56–57. This makes clear that TooBaRoo is attempting to recover a money judgment that it possesses against WRI by seeking funds transferred to third parties (the Burri Defendants). Indeed, TooBaRoo appears to concede that any recovery would reduce or eliminate its claim made in WRI's bankruptcy. Doc. 1-2, at 32. Accordingly, the Court adopts the Bankruptcy Court's Proposed Findings on this point and holds that § 362(a)(1) precludes TooBaRoo from pursuing its pled claims absent an order of the Bankruptcy Court lifting the automatic stay.[10]

---

[10] TooBaRoo's position on the nature of the money it seeks to recover—specifically that it seeks its own property and therefore the claims implicate Missouri partnership law—does not persuade the Court to make a different finding than did the Bankruptcy Court. In its state court petition, TooBaRoo seeks to satisfy a money judgment through a creditor's bill and a claim to pierce the corporate veil. Neither of TooBaRoo's current claims would exist without a money judgment against WRI. As discussed below, whatever arguments (or claims) TooBaRoo *could* have stemming from Missouri partnership law—constructive trust or otherwise—do not convert TooBaRoo's current claims into anything more than what they are on their face: state law claims to aid in the enforcement of a money judgment reflecting compensatory contract damages. The Court expresses no opinion on (1) whether TooBaRoo could assert a constructive trust claim or (2) whether such a claim would be subject to the automatic stay. The Court merely holds that TooBaRoo's current claims, as pled, are subject to the automatic stay.

### ii.    Whether TooBaRoo's Petition Violates 11 U.S.C. § 362(a)(6)

The Bankruptcy Court also proposed finding that TooBaRoo's Petition violates § 362(a)(6), which stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362.  This provision applies both to informal acts to collect a claim against the debtor and "more formal judicial and administrative proceedings that are also stayed under subsection (a)(1)."  3 Collier on Bankruptcy ¶ 362.03[8][a] (Richard Levin & Henry J. Sommer eds., 16th ed. 2018).  Therefore, § 362(a)(1) and (a)(6) may sometimes prohibit the same conduct.  The Bankruptcy Court found that under the Eighth Circuit's decision in *Just Brakes I*, § 362(a)(6) must apply here.  108 F.3d at 884.

In *Just Brakes I*, creditors sought to satisfy a previously-obtained state court judgment against an entity by suing a third party to whom that entity had, allegedly, fraudulently transferred its most valuable asset, a trademark. The state court agreed that the trademark had been fraudulently transferred to the third party by the entity, and prepared to sell the trademark to satisfy the creditors' judgment against the entity.  Minutes before the final sale, however, that entity filed for bankruptcy, becoming a bankruptcy debtor protected by the automatic stay. *Id.* at 883.  As a result, the state court ordered that the foreclosure-sale proceeds be held in escrow.  *Id.* Nevertheless, while the bankruptcy was pending, the judgment creditors applied for, and received, payout from the state court's escrowed funds, thereby satisfying the judgment against the bankruptcy debtor entity. *Id.*

The Eighth Circuit unambiguously held that a judgment creditor's application for and receipt of the escrowed funds to satisfy a judgment against a bankruptcy debtor, violated § 362(a)(6) as an act to collect a pre-petition "claim against the debtor[.]" *Id.* at 884.  The Eighth Circuit also reasoned that the creditor's collection action, while technically against a third party,

21

Case 4:22-mc-09005-NKL   Document 7   Filed 12/13/22   Page 21 of 33

prejudiced the trustee's ability to litigate her competing claim seeking proceeds from the fraudulent transfer on behalf of all creditors; permitting that tactic, the Eighth Circuit held, would fly in the face of the basic purpose of the automatic stay: "to prevent creditors from stealing a march on each other." *Id.* (citation omitted).

Put simply, and in the Bankruptcy Court's words: "§ 362(a)(6) unambiguously prohibits any act to collect a claim that is against the debtor, even if the acting party directs its act at a non-debtor." Doc. 1, at 43. Accordingly, the Bankruptcy Court proposed finding that by filing its lawsuit to collect on its judgment against WRI, TooBaRoo "acted" in violation of § 362(a)(6). Therefore, "all post-bankruptcy acts TooBaRoo has taken in pursuit of the removed causes of action, including the filing of the state court lawsuit, have violated § 362(a)(6) as acts to collect TooBaRoo's judgment against [WRI]." Doc. 1, at 44.

TooBaRoo attacks the Bankruptcy Court's "characterize[ation]" of the Eighth Circuit's ruling in *Just Brakes I* because, according to TooBaRoo, the trustee in *Just Brakes I* had established that the fraudulently transferred property was property of the bankruptcy estate. Doc 1-2, at 27 (citing *Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corp. Sys., Inc.)*, 293 F.3d 1069, 1072 (8th Cir. 2002) (*Just Brakes II*)). That is not what the Eighth Circuit held. In *Just Brakes I*, the Eighth Circuit explicitly held that "[t]he nature of debtor's present interest in the trademark [which had been transferred to a third party and from which the creditor satisfied its prepetition judgment against debtor] is an interesting question, but one that we need not resolve because, by collecting the foreclosure sale proceeds [proceeds generated from the sale of property in the hands of a third party to satisfy creditor's state court judgment against bankruptcy debtor], appellants violated § 362(a)(6)." *Just Brakes I*, 108 F.3d at 884.

Indeed, the Eighth Circuit remanded for a recalculation of damages against the creditors

for violating the automatic stay because, by awarding the value of the trademark as damages, the lower court erred. This was because the trustee had not yet established his right to avoid the transfer and recover the value of the trademark for the bankruptcy estate. *Id.* at 885; *see also Just Brakes II*, 293 F.3d at 1071 ("The value of the trademark was not necessarily an appropriate compensatory remedy, we observed, because the Trustee had 'never established his right to avoid the debtor's pre-petition transfer and recover the trademark or its value for the estate.'").[11] Accordingly, actions by a creditor to satisfy a judgment against a debtor, even actions to recover funds from a third party, are subject to the bankruptcy stay under 362(a)(6). This question is distinct from whether the assets in the hands of the third party ultimately *belong* to the bankruptcy estate. What matters is that the trustee must be given the opportunity to litigate her claim. Therefore, a court need not resolve on the merits whether the property sought belongs to the bankruptcy estate before finding that the bankruptcy stay applies.[12]

### iii. Whether Abandonment by the Trustee Defeats the Automatic Stay

TooBaRoo's final argument, albeit implicit, amounts to "the Trustee has abandoned her claim to the property TooBaRoo now seeks," and therefore the automatic stay should not apply.

---

[11] *See also Just Brakes II,* 293 F.3d at 1071 (rejecting the trustee's argument that it was "'implicit in the Eighth Circuit Opinion' that the trademark was part of the bankruptcy estate . . . because there could be no violation of the automatic stay unless the proceeds were derived from a sale of the estate's property." Instead holding "[t]his contention, too, was patently wrong. In the first appeal, we squarely held that we did not need to decide whether the trademark or its proceeds were property of the bankruptcy estate because Defendants violated § 362(a)(6) by taking post-petition action to collect their pre-petition judgment from the trademark proceeds, and that violation 'prejudiced the Trustee's ability to litigate a competing avoidance claim on behalf of all creditors.'").

[12] Again, this is distinct from a creditor's action to recover from a party who is separately liable for the debt owed; for example, a guarantor or party who is jointly and severally liable for a judgment. In those cases, the third party is itself liable, whereas, here, TooBaRoo's claim as pled alleges that the Burri Defendants' liability to TooBaRoo flows only through TooBaRoo's judgment against WRI.

Case 4:22-mc-09005-NKL   Document 7   Filed 12/13/22   Page 23 of 33

*See* Doc. 1-2, at 27–28. The Bankruptcy Court has never made a finding that the Trustee has abandoned these claims. Abandonment must be explicit, and when the evidence is ambiguous, courts do not infer a trustee has abandoned property or causes of action. *See In re Wilton Armetale, Inc.,* 968 F.3d at 284. Here, the evidence is, at best, ambiguous. A cause of action is not abandoned because it does not appear on a bankruptcy schedule. *In re Enyedi*, 371 B.R. 327, 334 (Bankr. N.D. Ill. 2007) (finding cause of action not abandoned even though it was unlisted on the bankruptcy schedules because omitting estate property from a schedule does not automatically abandon it and because the bankruptcy court never ordered the causes of action abandoned). The Trustee has further represented to both this Court and the Bankruptcy Court that she fully intends to proceed against the Burri Defendants. This representation is corroborated by the fact that the Trustee has filed agreements to toll the statute of limitations for the claims against the Burri Defendants. *See In re Western Robidoux, Inc.*, 19-bk-50505 (Bank. W.D. Mo), Doc. 379. While TooBaRoo takes issue with the legal effect these agreements, that is not an issue before this Court.

At bottom, the automatic stay protects the Trustee's ability to litigate her claim; she may not succeed, be it on the merits or because the claims are untimely, but, on the record before this Court, the Trustee has not abandoned any claims she may have against the Burri Defendants. Therefore, the automatic stay still bars TooBaRoo's lawsuit.

### iv. Whether TooBaRoo's Claims Are Void *Ab Initio*

After concluding that TooBaRoo's state court lawsuit violated the automatic stay, the Bankruptcy Court proposed finding that the Petition is void *ab initio*. Courts disagree on the result of an automatic stay violation. Some find that actions taken in violation of an automatic stay are merely voidable. Others, indeed, the majority, find that actions taken in violation of an automatic stay are, and always were, void. *See, e.g.*, *LaBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317,

321–23 (B.A.P. 8th Cir. 1999). The Bankruptcy Court followed the majority approach, as accepted by the Bankruptcy Appellate Panel for the Eighth Circuit. *Id.* Neither party argues that the Bankruptcy Court erred following this approach, and this Court agrees that actions taken in violation of the automatic bankruptcy stay are void *ab initio*. Accordingly, because the Court agrees that TooBaRoo violated the automatic stay by filing its state court lawsuit, the lawsuit is void, and there is no action to remand. The Court accordingly DENIES TooBaRoo's Motion to Remand and DISMISSES its claims without prejudice. *Hamm v. R.H. Macy & Co.*, 93-cv-1446, 1994 WL 507717, at *2 n.1 (S.D.N.Y. Sept. 13, 1994) ("In situations where the complaint was filed after bankruptcy, . . . dismissal is appropriate because the filing of the complaint itself was void.").

While TooBaRoo does not dispute that actions taken in violation of the automatic stay are void, it does argue that the Bankruptcy Court failed to address its request to retroactively lift the stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2).[13] *See* Doc. 1-2, at ECF 34. TooBaRoo did alternatively move to lift the automatic stay before the Bankruptcy Court for "cause," given WRI "has shown no interest in pursuing any state law claims against the Defendants." *See In re Western Robidoux, Inc.* 21-4016, Doc. 25, at 12–13. While the Bankruptcy Court did not explicitly resolve TooBaRoo's request for retroactive relief, the Court finds that implicit in the Bankruptcy Court's Proposed Findings was a finding that retroactive relief was inappropriate, even if the Bankruptcy

---

[13] As discussed in more detail below, TooBaRoo's claims as pled are not acts against property as required by 11 U.S.C. § 362(d)(2). Even still, an exception under that section is not automatic; it requires a request, a hearing, and a court order. There is no evidence TooBaRoo has followed the appropriate procedure. This is especially problematic given TooBaRoo bears the burden of proof under § 362(d)(2), a burden that TooBaRoo has not addressed, let alone met. Accordingly, § 362(d)(2) is not relevant to this Order.

Court may entertain a future request to lift the stay.[14]

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—for cause[.]" 11 U.S.C. § 362(d)(1). Courts may grant this relief even after a stay violation. However, a request to undo the stay retroactively "should require a measurably greater showing." *In re Soares*, 107 F.3d 969, 977 (1st Cir. 1997). "If retroactive relief becomes commonplace, creditors—anticipating post facto validation—will be tempted to pursue claims against bankrupts heedless of the stay, leaving debtors with no choice but to defend for fear that post-petition default judgments routinely may be resuscitated." *In re Sklar*, 626 B.R. 750, 763 (Bankr. S.D.N.Y. 2021) (quoting *In re Soares*, 208 F.3d at 977). Accordingly, as the Eighth Circuit Bankruptcy Appellate Panel has made clear, a court should grant retroactive relief from an automatic stay sparingly and only in compelling circumstances. *In re Vierkant*, 240 B.R. 317, 325 (8th Cir. BAP 1999). Indeed "instances in which the exercise of that discretion is justified are likely to be few and far between." *In re Soares*, 208 F.3d at 977; *see also Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir. 1995) (stating that courts should indulge retroactive annulment only in extreme circumstances); *In re Pulley*, 196 B.R. 502, 504 (Bankr. W.D. Ark.

---

[14] The Court reviews the Bankruptcy Court's denial of retroactive stay relief for an abuse of discretion, rather than the *de novo* review required when evaluating TooBaRoo's Motion to Remand. *See* Section II, *supra* at 2; *see also In re Yellowstone Mountain Club, LLC*, 841 F.3d 1090, 1097 (9th Cir. 2016) (explaining that the bankruptcy court had constitutional authority to decide claims for relief that "could not exist independently of [a] bankruptcy case" without implicating *Stern*). However, even addressing the issue *de novo*, this Court concludes that retroactive stay relief is inappropriate. The law is clear that retroactive stay relief should be exceedingly rare, and, as explained further below, there are no equitable considerations here that would justify granting TooBaRoo such an exception. It is for the Bankruptcy Court to decide whether prospective stay relief is appropriate, but, considering retroactive relief requires a higher showing, this Court has no trouble holding that retroactive relief is inappropriate here. *In re Soares*, 208 F.3d at 977. At bottom, this Court would deny retroactive stay relief even if the Bankruptcy Court had not already done so.

26

1996) (similar). Whether to award retroactive relief is left within the sound discretion of the bankruptcy court and is accordingly reviewed for an abuse of discretion. *In re Soares*, 208 F.3d at 978; *Ritchie Special Credit Investments, Ltd.*, 620 F.3d at 853; *see also In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012) (citing *Wiley v. Hartzler (In re Wiley)*, 288 B.R. 818, 821 (8th Cir. BAP 2003)).

Here, the Bankruptcy Court stated, albeit when addressing whether equitable justifications existed to find the current state court lawsuit was not void under the minority approach used outside the Eighth Circuit, that "no limited equitable circumstances would prevent the [Bankruptcy Court] from voiding this proceeding because the court determines dismissal is a fitting consequence of TooBaRoo's apparent strategic decision to commence this proceeding without first obtaining stay relief." Doc. 1, at 46. Given this language, paired with the Bankruptcy Court's ultimate proposal that this matter be dismissed as void, the Court concludes that the Bankruptcy Court denied TooBaRoo's alternative request for retroactive relief. This Court agrees with that decision.

As the Bankruptcy Court—and indeed, TooBaRoo itself—explained, TooBaRoo filed its current state court lawsuit only after it appeared to TooBaRoo that it was not going to recover through the bankruptcy process. *See, e.g.*, Doc. 1-2, at 6. TooBaRoo then made the calculated decision, with full knowledge of the automatic stay and the Bankruptcy Court's efforts to administer the Estate,[15] to file its current lawsuit in state court to satisfy its judgment against WRI. TooBaRoo did not tell the Bankruptcy Court that it was going to file (as far as the Court can tell), let alone request stay relief. That is exactly the type of procedural jockeying the federal courts work to avoid in bankruptcy proceedings. *In re Sklar*, 626 B.R. at 763 (quoting *In re Soares*, 208

---

[15] TooBaRoo itself filed a claim in the bankruptcy proceedings representing the full value of its judgment against WRI. *See* Doc. 1, at 4.

F.3d at 977). TooBaRoo's only justifications are that it seeks its own property, not any property of the Estate, and that the Trustee has abandoned any competing claim. However, TooBaRoo used neither argument to affirmatively seek stay relief. Now, the Trustee has indicated that she believes the property does in fact belong to the Estate, and the automatic stay exists in part to permit the Trustee to *litigate* in Bankruptcy Court a competing claim. It was not an abuse of discretion for the Bankruptcy Court to deny retroactive stay relief.

### C. Whether TooBaRoo's Additional Objections Have Merit

TooBaRoo raises various other objections to the Bankruptcy Court's Proposed Findings which the Court discusses in more detail below.

### i. Whether TooBaRoo's Arguments About the Nature of the Damages it was Awarded Changes the Analysis

Plaintiff repeatedly criticizes the Bankruptcy Court for "failing" to understand that TooBaRoo is seeking money that belonged to TooBaRoo in the first instance; specifically, profits from the joint venture that were wrongfully syphoned out of WRI and into the pockets of the Burri Defendants. TooBaRoo argues that this money represents the interest TooBaRoo and Breht Burri had in the joint venture when both Breht and TooBaRoo were wrongfully ousted, relying on *Schneider v. Schneider*, 146 S.W.2d 584, 589 (Mo. 1941). Because of that, TooBaRoo argues that, under Missouri law, the money it seeks to recover was held in a constructive trust for TooBaRoo, and therefore WRI and the Estate has no interest in it and TooBaRoo should be permitted to proceed with its enforcement actions in state court.

First, as previously explained, TooBaRoo's current state court lawsuit seeks to satisfy a money judgment it has against WRI, a bankruptcy debtor, and is therefore stayed. The Bankruptcy Court's decision did not, and had no need to, resolve whether WRI or TooBaRoo or the Burri Defendants have an ownership interest in the property TooBaRoo seeks; it is enough that

TooBaRoo seeks to satisfy a judgment against WRI, a bankruptcy debtor and its lawsuit violates the automatic stay. While the Court understands that a wrongfully-ousted partner's share of partnership assets is held in constructive trust, *Schneider*, 146 S.W.2d at 589, TooBaRoo did not plead that its share of the joint venture assets is subject to a constructive trust, either in its pending state lawsuit or in its original lawsuit against WRI, nor has it cited any case suggesting that a judgment creditor could convert a money judgment into a constructive trust after the judgment was entered. [16]

Further, TooBaRoo's assertion that its "pursuit of its money in the hands of Breht Burri's relatives has nothing to do with WRI" ignores the fact that it is only proceeding against the Burri Defendants to satisfy a judgment it holds *against WRI*. *See* Doc. 1-2, at ECF 38, 59. TooBaRoo's state court lawsuit was not pled as an independent equitable action to recover TooBaRoo's property that is in the hands of a third party; this lawsuit, as pled in TooBaRoo's own words, seeks to satisfy a money judgment for breach of a joint venture agreement. The Bankruptcy Court carefully addressed this issue in its Proposed Findings, Doc. 1 at ECF 32, n. 40, which this Court adopts in full.

The Court rejects TooBaRoo's attempt to recast its state court action as anything more than an attempt to satisfy a state court judgment against WRI, and the Court adopts the Bankruptcy

---

[16] TooBaRoo states that it faced a unique legal challenge because it could not have brought its original claim against WRI as an equitable action under Missouri partnership law, given WRI disputed the partnership's very existence. *See* Doc. 1-2, at 10 (citing *Schreibman v. Zanetti*, 909 S.W.2d 692, 699 (Mo. Ct. App. 1995)). This is an admission that it did not bring such a claim and at least implies such a claim would not be successful. However, the Court does not address here whether TooBaRoo has a property interest in the assets wrongfully taken by the Burri Defendants. The Court only holds that, to the extent that TooBaRoo wishes to litigate its property interest, it must do so through the Bankruptcy Court, or seek stay relief from the Bankruptcy Court, given the automatic stay. This is to give the Trustee an opportunity to litigate her competing claim for the assets; whether she will be successful is a different question, and one not before this Court. *Just Brakes I*, 108 F.3d at 884.

Court's findings on this point accordingly. *See* Doc. 1-2, at ECF 22. As the Bankruptcy Court held, TooBaRoo violated § 362(a)(1) and (a)(6) by filing its pending lawsuit.

### ii. Whether TooBaRoo's Claim Arose Before the Bankruptcy

TooBaRoo also argues that the automatic stay cannot apply because its claims did not arise before WRI filed its bankruptcy petition. Specifically, TooBaRoo claims that, as a practical matter, it could not have filed its state law claims before WRI filed for bankruptcy. Doc. 1-2, at 18–21. This is because a creditor's bill claim is a claim of last resort, left for when all other options fail. *Linder v. Hawkeye-Sec. Ins. Co.*, 472 S.W.2d 412, 414 (Mo. 1971). While that may be true, TooBaRoo focuses on the wrong claim; the proper focus is the underlying state court judgment against WRI that the creditor's bill is meant to satisfy.

An automatic stay "is limited to actions which could have been commenced before the commencement of the [bankruptcy] case *or* which are based upon claims that arose before the commencement of the case." *Turner Broad. Sys., Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 999 (N.D. Ga. 1983) (citing 2 L. King, *Collier on Bankruptcy*, ¶ 362.04[1] at 362–27 (15th ed. 1979)) (subsequent history omitted); *see also In re Koeller*, 170 B.R. 1019, 1021 (Bankr. W.D. Mo. 1994). The Bankruptcy Code broadly defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). Therefore, a "claim" in bankruptcy is "more extensive than the existence of a cause of action that entitles an entity to bring suit." *Owens v. LVNV Funding, LLC*, 832 F.3d 726, 731 (7th Cir. 2016); *In re Grossman's*, 607 F.3d 114, 121 (3d Cir. 2010) (holding that a "claim" can exist in bankruptcy notwithstanding an inability to commence an action under state law at the time of filing).

Accordingly, TooBaRoo's claims did arise before the bankruptcy, even though TooBaRoo may not have been able to bring its state law claims before WRI declared bankruptcy. The "right

to payment" was established by TooBaRoo's pre-bankruptcy state court judgment, and the fact

that TooBaRoo's creditor's bill claim could not have been filed before bankruptcy does not prevent

the imposition of the automatic stay. *In re Food Barn Stores, Inc.*, 175 B.R. 723, 729 (Bankr.

W.D. Mo. 1994) ("While [a] cause of action . . . may not have matured under state law until after

the petition was filed, [the] claim for bankruptcy purposes arose before the petition [was] filed.

This is so because a 'right to payment' under the definition of 'claim' includes obligations which

are neither matured, nor liquidated, nor fixed . . . . If the cause of action under state law does not

accrue pre-petition, it need not necessarily follow that a claim for bankruptcy purposes does not

accrue pre-petition as well.") (quoting *In re Amfesco Indus., Inc.*, 81 B.R. 777 (Bankr. E.D.N.Y.

1988)).[17]  This outcome makes sense, given that with "the passage of § 362, Congress intended

the automatic stay to stop 'all collection efforts, all harassment, and all foreclosure actions' and

'prevent creditors from attempting in any way to collect a prepetition debt.'" *In re Goodfellow*,

298 B.R. 358, 361 (Bankr. N.D. Iowa 2003).[18]  Accordingly, the Court rejects this argument.

---

[17] By filing a notice of claim for its state court judgment in the bankruptcy proceedings, TooBaRoo effectively acknowledged that its "claim" arose before bankruptcy.  Doc. 1, at 4; *see also In re Johns-Manville Corp.*, 57 B.R. 680, 688 (Bankr. S.D.N.Y. 1986) ("Similarly, [plaintiff] incurred prepetition damages in making repairs to a building which had been constructed with Rescon supplied by [debtor].  [Plaintiff] knew the source and nature of its damages and filed a proof of claim in these proceedings for those damages both incurred and anticipated.  By filing this claim for damages arising from prepetition events, [plaintiff] admits that its claim falls within the ambit of these reorganization proceedings.  Nevertheless, shortly after filing its claim, [plaintiff] also instituted a state court action seeking to recover precisely those damages sought in the proof of claim.  [Plaintiff] cannot be allowed to simultaneously pursue its claim in two separate fora namely the California state court and the federal bankruptcy court.").

[18] TooBaRoo argues that "under the plain language of § 362(b)(24) [an exception to the automatic stay], § 362(a) cannot apply."  Doc. 1-2 ECF 23.  § 362(b)(24) states that filing a bankruptcy petition will not stay "any transfer that is not avoidable under section 544 and that is not avoidable under section 549."  11 U.S.C § 362(b)(24).  The Court finds this exception inapplicable to the facts of this case.  Nothing in the Court's opinion purports to stay any transfer.  TooBaRoo's argument, albeit difficult to follow, appears to suggest that because its state court claims challenge pre-petition transfers made by the Burri Defendants, § 362(b)(24) applies.  The Court does not see

### iii.    Whether the *Rooker-Feldman* Doctrine Applies

Under the *Rooker-Feldman* doctrine, a lower federal court cannot exercise subject matter jurisdiction over an action that "seek[s] review of, or relief from, state court judgments." *Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016). Whether the doctrine applies depends on whether a federal plaintiff seeks relief from a state court judgment based on an allegedly erroneous decision by a state court. *Id.* at 615; *see also MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008) (rejecting application of the doctrine in a case where appellants did not challenge the state court's "issuance of the judgment or seek to have that judgment overturned"). Relatedly, when a federal court action would effectively reverse or void a state court ruling, or it is "inextricably intertwined" with a state court judgment, the *Rooker-Feldman* doctrine may apply. *Goetzman v. Agribank, F.C.B. (In re Goetzman)*, 91 F.3d 1173, 1177 (8th Cir. 1996).

TooBaRoo argues that finding that it violated § 362(a) "necessarily eviscerates Toobaroo's judgment against WRI along with the factual determination that the judgment represents Toobaroo's damages, which were its share of the joint venture, including joint venture profits." Doc, 1-2, at 30. The Court finds the *Rooker-Feldman* doctrine inapplicable. *Caldwell v. DeWoskin*, 831 F.3d 1005, 1009 (8th Cir. 2016) ("[Plaintiff's] claims are not barred by *Rooker-Feldman* because they challenge the actions taken . . . in seeking and executing the [state contempt orders], rather than the state court orders themselves.") (internal quotation omitted). TooBaRoo's state court judgment established that WRI violated the joint venture agreement and that TooBaRoo was entitled to specific compensatory damages. Nothing in this Order questions, or even implicates, that underlying judgment against WRI. However, because WRI filed for bankruptcy, TooBaRoo cannot *collect* that judgment outside the bankruptcy process unless the automatic stay

---

how, and TooBaRoo cited no case supporting its argument. Put simply, § 362(b)(24) exempts certain post-petition *transfers* from the automatic stay, not lawsuits or claims more generally.

is lifted by the Bankruptcy Court. *In re Valentine*, 611 B.R. 622, 632 (Bankr. E.D. Mo. 2020) ("The Court holds the jurisdiction to determine that a stay violation occurred, because the challenge is not to the Pre-Petition Debt, but to the collection efforts 'in seeking and executing' the [state court order]."). Interpreting the *Rooker-Feldman* doctrine as TooBaRoo suggests would essentially extend its application to all cases in which a bankruptcy stays the collection of a state court judgment. The law does not support such an outcome. The Court therefore rejects this argument.

## IV. CONCLUSION

For the reasons discussed above, the Court adopts the Bankruptcy Court's Proposed Findings in full. Furthermore, the Court concludes that the none of the objections by the Burri Defendants and the Trustee, Doc. 1-1, or by TooBaRoo, Doc. 1-2, to the Bankruptcy Court's Proposed Findings have merit. As a result, the Court holds that TooBaRoo's state court causes of action are not property of the Estate, but they are nevertheless subject to the automatic bankruptcy stay. TooBaRoo violated the stay by filing its pending lawsuit and it is therefore void ab initio. Accordingly, TooBaRoo's pending lawsuit is DISMISSED without prejudice and its Motion to Remand is DENIED as moot.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: 12/13/2022
Jefferson City, Missouri